IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ABBASID, INC.,

               Plaintiff,

vs.                                                       CIVIL NO.   07-1006 WJ/LFG

THE TRAVELERS
INDEMNITY COMPANY,

               Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR EXTENSION**
**OF TIME TO CONDUCT DISCOVERY AND DISCLOSE EXPERTS**

THIS MATTER is before the Court on Defendant's Motion for Extension of Time for Parties to Conduct Discovery, Disclose Rule 26 Experts and for a New Scheduling Order [Doc. 76]. The Court considered the motion, Abbasid, Inc.'s ("Abbasid") response in opposition [Doc. 80], and The Travelers Indemnity Company's ("Travelers") reply [Doc. 82]. For the reasons stated herein, the motion is GRANTED.

**Background**

This lawsuit is inextricably intertwined with several highly contentious and bitter disputes swirling around the personal, business and marital relationship between Azhar Said ("Said") and Bina Shahani ("Shahani"). Their December 21, 2004 marriage foundered and, ultimately, capsized in the turbulent and stormy seas of an unusual business and marital relationship. The flotsam and jetsam of this marital shipwreck resulted in state court litigation in Florida, Texas and New Mexico, as well as three federal lawsuits pending in the United States District Court for the District of New Mexico.[1]

---

[1] These lawsuits include claims for fraud and conversion brought by Abbasid, Inc. and Azhar Said against Bina Shahani in the First Judicial District Court in New Mexico. Shahani counterclaimed for divorce, spousal support and division of assets, and brought separate claims against Phoenician Imports, Inc., a

**Present Lawsuit**

Abbasid's present lawsuit is a first-party breach-of-insurance contract action brought by Abbasid, Inc. to recover damage to inventory and business under a general policy issued by Travelers [Joint Status Report and Provisional Discovery Plan, Doc. 6, p. 1].  In the parties' Joint Status Report, Abbasid claims damage to or loss of ten imported rugs with a claimed combined value of $154,831.60.  Abbasid alleges that, in October 2004, it obtained from Travelers a "Store Pac" insurance package, which included "business owner's property coverage," insuring Abbasid against the losses and expenses described in the policy.  Abbasid further alleges that "Plaintiff [Abbasid, Inc.] suffered damage to its business property, " [Amended Complaint, Doc. 13, p. 2, ¶ 4] and that "The damage to plaintiff's business property . . . is a loss insured against under the Policy." [Amended Complaint, Doc. 13, p. 2, ¶ 5].

Abbasid further contends that in addition to the damage or loss to "plaintiff's business property, plaintiff incurred 'expediting expenses,' 'extra expenses,' 'preservation of property expenses,' 'temporary relocation of property expenses,' cleaning expenses incurred at defendant's request, and a loss of business income . . . ." [Amended Complaint, Doc. 13, p. 2, ¶ 6].  Abbasid alleges that it made a demand for coverage under the policy, but that Travelers refused to agree to an appraisal, and failed and refused to make payment of sums due to Abbasid.

---

company owned by Abbasid.  She also brought claims against various other and sundry defendants.
    A domestic relations action involving the parties was initiated in a Florida state court.  Said, in turn, initiated an annulment action as "a punitive procedure directly related to the New Mexico divorce action, designed to punish wife for the New Mexico divorce . . . ." [Transcript on ruling for interim application for attorney fees entered by Judge Jim Hall, D-0101-CV-200701879, p. 2, ¶ 6].
    The dispute has also spawned lawsuits brought by Abbasid against the First National Bank of Santa Fe (CIV 09-347 JP/LFG), and another against the Los Alamos National Bank (CIV 09-354 JP/LFG).

**Present Motion**

Travelers' motion outlines this case's troubled history. This case was removed to this court on October 2, 2007. It was originally and promptly assigned to a "standard" case management track [Doc. 8], and a plan adopted to ensure that the case would be brought to completion well within the one-year time limit for standard case management track cases. Indeed, an early settlement conference was set for February 25, 2008 [Doc. 10]. Shortly after the Fed. R. Civ. P. 16 scheduling conference, Travelers served its First Request for Production of Documents on Abbasid [Doc. 16]. Following service of the Request, Abbasid's attorney, Anthony Sawtell, and attorney Aaron J. Wolf entered an appearance on behalf of Abbasid [Docs. 17 and 18]. Mr. Wolf's entry of appearance was followed by a request to extend the time to respond to Traveler's First Request for Production of Documents [Doc. 20], and that request was, in short order, followed by Abbasid's request to continue the early settlement conference [Doc. 22]. Both requests were granted [Docs. 21 and 23].

The Court immediately set a new date for another settlement conference to be conducted within 60 days [Doc. 24]. Shortly after the Court gave notice of the new setting, Abbasid moved to vacate the Scheduling Order and made a second request to extend the time to respond to Travelers' Request for Production. Both requests were granted [Docs. 25, 26, 27 and 28].

Pursuant to Abbasid's request, the Court set and conducted another scheduling conference on March 11, 2008, and entered a second scheduling order setting a discovery deadline of June 11, 2008 [Docs. 29, 30, and 31]. Two days later, Abbasid provided partial responses to Traveler's Request for Production, but provided no documents responsive to the Request. As a result, Traveler's was compelled to file a Motion to Compel [Doc. 57].

A few days prior to the second calendared settlement conference, Shahani moved to intervene in this lawsuit, contending that she had interest in and claims to the money which Abbasid sought in

this litigation. She stated in part:

> Abbasid, Inc. is a putative corporation claimed to be wholly owned by Azhar Said suing for economic loss and business damage on behalf of a Santa Fe business. That business "Azhar's Oriental Rugs" is in fact jointly owned in equal shares by Said and Shahani pursuant to an agreement of the parties whereby Said provided inventory owned by "Phoenician Imports, Inc." another of his putative corporations, and Shahani provided management and day to day oversight from inception of the business in August, 2004. Moreover, the parties were married on December 21, 2004 and remained husband and wife through March 13, 2008, whereby any business losses suffered were community in character.

[Doc. 33, Motion to Intervene, p. 6].

Shahani referred to three lawsuits initiated by Abbasid. One was a divorce and replevin action brought in the state court in Florida; the second, a conversion and divorce case in New Mexico's First Judicial District; and the third, an annulment action in Texas. As a result of the motion, the Court conducted a Rule 16 status conference on April 14, 2008, and learned that several issues relevant to the parties in this action were specifically being litigated in the earlier filed New Mexico State court case, and were soon to be addressed by the Honorable Jim Hall. It was anticipated that the State litigation would promptly be resolved, and that a resolution of disputed factual issues would serve to narrow or resolve many of the issues in this litigation.

As a result, the Court vacated the settlement conference and stayed this lawsuit [Docs. 36, 39 and 40]. Due to the stay of this litigation, the parties were unable to proceed with discovery in accord with the scheduling order previously entered by the Court.

Thereafter, during the period of the stay, Abbasid's attorney, Mr. Wolf, sought to withdraw, citing Abbasid's failure to pay Wolf's attorney fees and the client's ongoing conflicts with Mr. Wolf. If the motion were granted, the withdrawal would have left Abbasid, Inc. as *pro se* litigant. As corporations may not appear in a *pro se* capacity, but can only appear through counsel, D.N.M.LR-

Civ. 83.7, the Court denied the motion but indicated that upon Abbasid obtaining substitute counsel, Mr. Wolf would be allowed to withdraw.

This federal case was stayed for more than a year pending the State court's resolution of the dispute between Abbasid, Inc., Said and Shahani. However, when no resolution was reached in State court after one year, the Court lifted the stay in this case [Doc. 48].

On June 11, 2009, the Court conducted another Rule 16 status conference, at which time it ordered Abbasid to provide the discovery not previously produced within thirty days of the conference. The Court also gave the parties forty-five days to complete discovery.

The proposed intervenor, Shahani, did not attend the status conference and did not seek leave of the Court to be absent. As a result of her failure to appear, the undersigned referral magistrate judge recommended that her motion to intervene be denied [Doc. 49 and 50].

Notwithstanding the Court's directive to Abbasid that documents be produced within thirty days of the conference, Abbasid failed to produce all of the documents, including corporate profit-and-loss reports, tax returns or releases to obtain tax returns, pleadings from other cases and invoices for the rugs allegedly owned, lost or damaged.

Because Abbasid failed in its discovery obligations, Travelers filed the Motion to Compel [Doc. 57]. Following completion of the briefing cycle, the Court granted Travelers' motion, holding that the information sought, including profit-and-loss reports, invoices and independent tax information was relevant and necessary. The Court ordered, for the second time, that Abbasid produce the information [Docs. 57, 64, 68 and 73].

On October 15, 2009, for the first time, Abbasid stated it did not have any invoices for the rugs claimed to have been damaged. It did, however, produce thousands of documents which it concedes are not "invoices," but contends are "transfer documents."

Travelers argues that Abbasid not only failed to produce documents, but its recent revelations that there are no invoices and, "for the first time, it now appears that Abbasid was not the owner of the rugs at the time the losses claimed," thus, implicating a different provision of the insurance policy [Doc. 76, Motion for Extension of Time . . ., p. 5, ¶ 23], means that new discovery is necessary.[2]  The contention is that the rugs were not owned by Abbasid, but, instead, by Phoenician Imports, Inc., a different corporation, whose entire stock is owned by Said.

Travelers argues that if Abbasid was not the owner of the rugs, then discovery that was not previously anticipated must now be conducted "into the nature of other interested parties and Phoenician Imports Inc," the alleged owner of the rugs.

Travelers also argues that Abbasid's new attorney, Michael J. Cadigan, "has dramatically revised the value of Plaintiff's claims, contrary to the values discussed with defense counsel by Plaintiff's previous attorneys." [Doc. 76, Motion for Extension of Time . . ., p. 5-6, ¶ 24].

Finally, Travelers argues that virtually all delays in this case have been occasioned by Abbasid, and that Travelers will be severely prejudiced if forced to proceed to trial without the benefit of discovery, especially in light of revelations that Abbasid, which claimed in both the Complaint and Amended Complaint to be the owner of the damaged property, is not the owner at all. Further, because losses to someone other than the owner are covered by different policy provisions, the defense theory in this case must, of necessity, change.

---

[2]In collateral litigation, the consolidated cases of Abbasid, Inc. v. First National Bank of Santa Fe and Abbasid v. Los Alamos National Bank, Abbasid and Said contend, in part, that Shahani stole, converted or otherwise conveyed Abbasid inventory, including rugs, to others for her living expenses.  It is unclear whether some of the rugs Abbasid alleges were wrongfully misappropriated and conveyed by Shahani are the same rugs which are the subject of this lawsuit.

**Analysis**

Case management plans are adopted to ensure that civil litigation proceeds efficiently and expeditiously and that cases are resolved within a reasonable period of time. *See, e.g.*, Civil Justice Reform Act of 1990 (CJRA), 28 U.S.C. §§ 471 *et seq.*, and the district's Civil Justice Expense and Delay Reduction Plan promulgated under the CJRA. A review of the CJRA's history states in relevant part:

> The purpose of this legislation is to promote for all citizens--rich or poor, individual or corporation, plaintiff or defendant--the just, speedy, and inexpensive resolution of civil disputes in our Nation's Federal courts.

Pub. L. 101-650, S. Rep. No. 101-416, at 1 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802.

The CJRA sought to address and alleviate the dual problems of cost and delay in federal civil litigation. Judicial case management and establishment of case management deadlines were included in this legislation as integral steps in eliminating delay. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989)("[o]ne of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation"). Indeed, studies on court delay conducted by the Federal Judicial Center show that courts with the least amount of delay characteristically keep stricter control over cases by the precise scheduling of cut-off dates and other deadlines. The federal study concludes, "a court can handle its case load rapidly only if it takes the initiative to require lawyers to complete their work in a timely fashion." Steven Flanders, Case Management and Court Management in United States District Courts 17 (1997).

This case has already been significantly delayed due to the succession of attorneys entering and withdrawing from representing Abbasid, and by Abbasid's failure to promptly produce

discoverable information. Further, the Court's own stay of proceedings resulted in prolonged delay.[3] In light of these delays and the discovery "foot-dragging," reopening discovery is not favored, as the additional discovery will only further prolong an already long-delayed lawsuit. However, courts should not be slaves to schedules. <u>Dabney v. Montgomery Ward & Co.</u>, 692 F.2d 49, 52 (8th Cir. 1982). The goal of every court proceeding is "to secure the *just*, speedy and inexpensive determination of every action . . . ." Fed. R. Civ. P. 1 [emphasis added]. In other words, a just determination should not be trumped by a speedy one. After all, the very goal of this lawsuit is to determine and enforce the parties' rights and responsibilities.

Recent developments in this case raise significant questions as to the ownership and value of the subject rugs. Further, Abbasid's representations that invoices were being collected and would be provided have recently changed to an explanation that there are no invoices, but, instead, "transfer documents." Moreover, recent discovery and documents confirm that the rugs were not owned by Abbasid, Inc. but by a separate corporation, Phoenician Imports, Inc., a separate entity whose stock is wholly owned by Said.[4]

These recent developments must, of necessity, implicate different provisions of the Travelers' policy. If the rugs were not owned by Abbasid, then, other provisions relating to the policy's coverage are implicated, and Travelers is forced to alter its defense position.

As the Court's goal is to make a just determination, it is only fair that the parties be given an opportunity to obtain documents, engage in discovery, and adequately prepare to either evaluate this

---

[3] Regrettably, the stay was this Court's effort to expedite the ultimate disposition of the case and to reduce costs of litigation. Had the State court resolved the issues between Said and Shahani that were integral to the ownership and operation of Abbasid, Inc., this present litigation would have been significantly narrowed, the costs would have been reduced, and the final disposition would have been expedited.

[4] Shahani's motion to intervene also lays claim to part ownership of Phoenician Imports, Inc.

case for settlement or to meet the proofs at the time of trial.  The Court concludes that Travelers has shown good cause for enlarging deadlines in the scheduling order.  "Good cause" in this context requires a showing that the scheduling order could not be met with diligence.  Denmon v. Runyon, 151 F.R.D. 404, 407 (D. Kan. 1993); *see also* Burks v. Okla. Publ'g Co., 81 F.3d 975, 978 (10th Cir. 1996).

Accordingly, the Court will allow the parties ninety days within which to conduct discovery to adequately prepare for trial in this matter.  Abbasid is afforded thirty days from date of entry of this Order within which to disclose its experts and produce expert reports.  The Travelers is afforded sixty days from date of this Order for its disclosure of experts and production of expert reports.  The new deadline for filing of non-discovery motions will be thirty days from the completion of discovery.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge