IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ABBASID, INC.,

    Plaintiff,

v.                                                                 No. 07-CV-1006 WJ/LFG

THE TRAVELERS INDEMNITY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendant Travelers Indemnity Company's Motion for Summary Judgment (Doc. 55). Plaintiff Abbasid, Inc. submitted multiple insurance claims to Defendant after several Oriental rugs in its inventory were damaged by sewage and water leaks. Two years later, when Travelers still had not taken final action on the claim, Plaintiff filed this suit for breach of insurance contract. Travelers then filed a Motion for Summary Judgment, arguing that Plaintiff's damages were specifically excluded by various provisions in the insurance contract. Because this Court finds that the damages asserted by Abbasid are excluded under the terms of the insurance policy, this Court GRANTS Defendant's Motion for Summary Judgment.

**BACKGROUND**

Plaintiff Abbasid, Inc. ("Abbasid") operates a store in Santa Fe, New Mexico which sells Oriental carpets. In 2005, Abbasid decided to move its store to a new location. On September 2, 2005, Abbasid's agent inspected the new premises and discovered ongoing leaks, visible mold

on the base of the walls, and substantial water damage to ceiling tiles, the carpet and the storeroom. In response to Abbasid's concerns, the landlord "expressly represented to [Abbasid] that all leaks from above the premises had been repaired, that no leaks existed, and that [Abbasid's] use of the premises would not be affected by future leaks." Ex. E, Defendant's Motion, at 2. The agent's report was attached to the lease and the landlord agreed to "make best efforts" to remedy the identified issues within thirty days. Two days later, on September 4, Abbasid began moving inventory into the store.

Days later, on September, 7, 2005, a substantial sewage leak damaged a stack of 350 luxury rugs in the show room. Abbasid immediately reported the problem to the landlord who hired a third party to fix the leak. The leak was finally fixed on September 10, 2005. On December 4, 2005 and January 4, 2006, Abbasid discovered mold and moisture damage to additional rugs stored in the back room. Abbasid submitted claims to its insurance company, Defendant Travelers Indemnity Company ("Travelers"), for each of these three events. Apparently, Travelers was still investigating these claims at the time that Abbasid filed suit in August 2007 and had not yet issued a formal denial of Abbasid's claims.

After a year-long stay in the proceedings for reasons unrelated to this motion, Travelers filed a Motion for Summary Judgment in July 2009. In its motion, Travelers argued that Abbasid's claims were excluded under three separate provisions of the insurance contract. First, Travelers asserts that the September 2005 sewage leak is excluded under the provision excluding damages caused "directly or indirectly" by "[w]ater or sewage that backs up or overflows from a sewer, drain or sump." Second, Travelers claims that the incidents of December 2005 and January 2006 are excluded under two separate provisions: (1) the neglect provision, which excludes damages caused by the "neglect of an insured to use reasonable means to save and

2

preserve property from further damage at and after the time of the loss"; and (2) the provision excluding damages caused by "continuous or repeated seepage or leakage of water or other liquids that occurs over a period of 14 days or more." This Court finds that Travelers is entitled to summary judgment with respect to all three claims. The damages from the September 2005 sewage leak are clearly excluded from coverage under the provision exempting damages caused by sewage backup. While the Court finds that the neglect provision does not apply here, the Court finds that the damages that occurred in December 2005 and January 2006 are clearly excluded under the continuous-leakage provision.

## STANDARD OF REVIEW

<u>Summary Judgment</u>. Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

<u>New Mexico Insurance Law</u>. The parties have stipulated that New Mexico law controls the interpretation of the insurance policy at issue. In New Mexico, basic contract law principles also govern the interpretation of insurance contracts. *Rummel v. Lexington Ins. Co.*, 123 N.M.

752, 758 (1997). When faced with the task of ascertaining the meaning of a provision in an insurance contract, New Mexico courts first ask whether the provision is clear and unambiguous. Undefined terms in an insurance contract are given their usual and ordinary meaning. *Battishill v. Farmers Alliance Ins. Co.*, 139 N.M. 24 (2006). If the provision is clear, the court will enforce the contract as written. If the provision is ambiguous, the court will resolve the ambiguities against the insurer and in line with the reasonable expectations of the insured. *Truck Ins. Exchange v. Gagnon*, 131 N.M. 151 (2001). Insurance exclusions must be clearly expressed in the policy and the insurance company must plead exclusions as affirmative defenses for which the insurer carries the burden of proof. *Miller v. Monumental Life Ins. Co.*, 2009 WL 1277745, at *23 (D.N.M. Mar. 31, 2009).

## DISCUSSION

Abbasid filed insurance claims with Travelers for three different events: (1) the sewage leak of September 2005; (2) the mold and water damage discovered in December 2005; and (3) the additional mold and water damage discovered in January 2006. The Court will analyze each claim in turn. Because the latter two claims involve the same type of damage and Travelers asserts the same policy exclusions for both, the Court will analyze those two claims together.

A.  <u>September 2005 Sewage Leak</u>

According to Plaintiff, the September 2005 sewage leak caused the bulk of the damage to the rugs. Specifically, on September 7, 2005, a large quantity of sewage fell through the ceiling tiles and damaged a large stack of Oriental rugs below. According to a report prepared by the Rimkus Consulting Group and attached to the Defendant's reply brief, the origin of the leak was "a failed connection of the sanitary sewer main serving the Garduno's Restaurant above." Ex. A, Defendant's Reply Br., at 2. Essentially, a section of the sanitary sewer main located above

Abbasid's show room had not been capped. Garduno's, the restaurant located directly above Abbasid, had hired a contractor to cap the sewer connection in 2001, but apparently the work was never completed. The immediate cause of the sewage overflow, however, was a blockage in the sewer pipe. According to the report, "[a] blockage of the sanitary sewer main serving Garduno's resulted in the failed connection discharging sanitary sewage into the Show Room." In other words, the sewer pipe became clogged with sewage which caused the sewage to back up through the pipe. When the backed-up sewage encountered the uncapped connection, the pressure of the backed-up sewage caused it to pour through the open connection and through Abbasid's ceiling tiles. The damage to Abbasid's rugs was caused by a combination of both defects: the uncapped sewer connection and the sewage back up.

> The relevant provision in the Travelers Insurance Policy states:
>
> B. EXCLUSIONS
> 1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
>   g. Water
>      (3)(a) Water or sewage that backs up or overflows from a sewer, drain or sump.
>      (b) Except for septic tanks, cesspool systems and exterior drains, this exclusion does not apply when the cause of the water back-up or sewage overflow occurs due to a blockage which originates on the described premises.

Neither party disputes that the September 2005 sewage leak did not originate on Abbasid's premises. Nor do the parties dispute that a sewage back-up occurred. *See* Plaintiff's Surreply, at 7. Rather, Abbasid argues that any sewage back-up is "immaterial" because the sewage that flooded the store "came from a failed connection . . . rather than the back-up." *Id.*

The Court disagrees. First, the insurance policy clearly excludes damages

5

resulting—even indirectly—from sewage back-ups. The policy states that Travelers will not cover damage from sewage back-ups "*regardless of any other cause or event that contributes concurrently or in any sequence to the loss*." It does not matter that the failed connection contributed to the damage or that the damage would not have been possible if the connection had been properly capped. As long as the damage resulted in some way from a sewage back-up, the policy clearly excludes it from coverage.

Abbasid cites to three cases from other jurisdictions to support its view that the provision at issue does not cover this scenario. First, Abbasid cites to *World Fire & Marine Ins. Co. v. Carolina Mills Distributing Co.*, 169 F.2d 826 (8th Cir. 1948), in which heavy rains overloaded the city's main sewer, causing the rainwater to back-up through the city's pipes and the resulting pressure to break off a cap in the defendant's plumbing system, which subsequently allowed the rainwater to flood defendant's basement. Like the instant case, the damage in *World Fire* was caused by more than one factor: the back-up of rainwater through the pipes and the broken cap in the plumbing. The difference between the two cases, however, is in the language of the insurance policy. In *World Fire*, two competing insurance provisions were at issue. One provision expressly insured the defendant against "all direct loss and damage caused solely by accidental discharge, leakage or overflow of water or steam from within . . . plumbing systems." *Id.* at 828. Another provision excluded any damage "caused directly or indirectly . . . [by] backing up of sewers or drains." *Id.* The Eighth Circuit held that the damage here was directly caused by the accidental discharge of waters from the defendant's plumbing system, bringing the scenario squarely under the insurance policy. In an attempt to reconcile the two competing provisions, the court held that the exclusion only applied to damage resulting from "from causes having no connection with the plumbing system." *Id.* at 830. Because the damage resulted most

directly from overflow of water from the defendant's plumbing system, the Court held that the exclusion did not apply. Not only is Travelers' policy structured differently from the policy at issue in *World Fire*, but Travelers' policy has no language competing with the exclusion provision with which this Court has to grapple.

Abbasid also cites to *Thompson v. Genis Building Corp.*, 394 N.E.2d 242 (Ind. Ct. App. 1979). In that case, a sewer line cap failed, allowing sewage to flow into plaintiffs' basement. Plaintiffs' insurance policy excluded damage caused by water which backs up through sewers or drains. The Indiana court held that "the plain and ordinary meaning of 'backing up' is 'to rise and overflow backward of water accumulating when checked.'" *Id.* at 245 (quoting Webster's New International Dictionary 199 (2d ed. 1942)). However, the court held that no back-up had occurred; rather, a sewer line cap had failed which allowed sewage to flow directly into plaintiffs' basement.[1] In contrast, in the instant case, the evidence shows and both parties agree that a sewage back-up occurred.

Finally, Abbasid cites to *Junius Development, Inc. v. New York Marine & General Insurance Co.*, 48 A.D.3d 426 (N.Y. App. Div. 2008), in which the court held that the back-up exclusion did not apply. Again, however, the facts of that case make it inapposite to the case at hand. In *Junius Development*, a worker poured water down a rooftop drain pipe. Unbeknownst to the worker, the drain pipe was clogged with debris and "the pressure created by the column of water above the obstruction caused the drainpipe to fail inside the premises, releasing quantities of water into the . . . basement." *Id.* at 427. The court held that the exclusion did not apply

---

[1] Furthermore, *Thompson* involved a motion for judgment on the pleadings, rather than a motion for summary judgment. The Indiana court could not consult any outside evidence to determine the cause of the sewage leak. Rather, the court had to rely entirely on the plaintiffs' characterization of the leak in their complaint.

because, again, no back-up had occurred.[2] "[T]he loss in this case was most immediately and visibly occasioned by the separation of the drain pipe . . . which resulted in water from the roof[] flowing directly into the basement." *Id.* at 427-28. Here, by contrast, a back-up indisputably occurred and that back-up was at least an indirect cause of Abbasid's damages. Furthermore, the policy here is very clear that Travelers is not liable for damage caused by a sewage back-up *regardless* of any other contributing cause.

For these reasons, I hold that the insurance policy clearly excludes Abbasid's damages resulting from the September 2005 sewage leak. Abbasid argues, in the alternative, that Travelers cannot rely on this exclusion because it failed to deny the claim in a timely manner. New Mexico law requires insurance companies to "affirm or deny coverage of claims . . . within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured." N.M. STAT. ANN. § 59A-16-20(D). In some jurisdictions, an insurance company waives the ability to enforce exclusions to coverage when it fails to issue a claims decision within a reasonable time. *See, e.g.*, *Pav-Lak Indus., Inc. v. Arch Ins. Co.*, 56 A.D.3d 287, 287-88 (N.Y. App. Div. 2008). However, Abbasid cited to no New Mexico cases—and this Court could find none—taking this approach. Furthermore, the Tenth Circuit has noted the general rule that "coverage of an insurance policy may not be extended by waiver or estoppel so as to include a particular risk which, under the terms of the written policy, is specifically excluded." *Council Oaks Learning Campus, Inc. v. Farmington Casualty Co.*, 310 F.3d 389 (10th Cir. 2000) (unpublished). Here, the damage asserted by Abbasid is clearly covered by the sewage-back-up exclusion provision in the insurance policy. Therefore, in the

---

[2] To the extent that a back-up did occur (because the facts of the case are unclear), this Court disagrees with the reasoning of the *Junius* court.

absence of any New Mexico case law applying waiver in cases such as these, I find that Travelers has not waived its ability to assert this defense. The opposite conclusion would result in an unfair windfall to Abbasid in the face of clear contractual language to the contrary.

B.     December 2005 & January 2006 Water Damage

Abbasid also filed claims with Travelers for water and mold damage to a set of rugs stored in the back room, which it discovered on December 4, 2005 and again on January 4, 2006. Travelers argues that this damage is excluded under both the neglect provision and the continuous-leakage provision. The Court will discuss each provision in turn.

First, Travelers claims the damage is excluded under the neglect provision. That provision excludes any damage caused directly or indirectly by the "[n]eglect of an insured to use reasonable means to save and preserve property from further damage at and after the time of loss." Travelers argues that Abbasid knew that leaks and mold existed in the premises even before moving into the space, and that its decision to move its inventory into the space regardless constitutes neglect. As support, Travelers cites *Bauco v. Hartford Fire Ins. Co.*, 2004 WL 573829 (Conn. Super. Ct. Mar. 3, 2004) for the proposition that neglect provisions mean "that the insured must act reasonably to save and protect the property (1) at the time of the loss, (2) after the loss, and (3) when 'the insured . . . [has] knowledge of a readily identifiable, imminent, and real peril, endangering the property.'" *Id.* at *10 n.7.

I disagree. First, the landlord assured Abbasid that the leaks had all been repaired prior to Abbasid's occupancy. Therefore, Abbasid cannot be charged with neglect because it did not move its inventory into the space without first verifying that the leaks had been fixed. Second, and more importantly, the neglect provision at issue here only excludes damage caused by the neglect of an insured to protect his property from further damage *"at and after the time of loss."*

9

In other words, the provision only excludes neglect by the insured that occurs at or after the time of damage. None of the alleged neglect on the part of Abbasid occurred at or after the time of damage—rather, it occurred months before the damage. Such neglect is not contemplated by the policy exclusion. Moreover, the case cited by Travelers in support of its position is both legally and factually inapposite. *Bauco*, an unpublished opinion, dealt entirely with fraudulent concealment of facts from an insurance company. The neglect provision was mentioned in an extraneous footnote which had no bearing on the disposition of the case. Furthermore, as Abbasid aptly points out, the insurance exclusion mentioned in *Bauco* is substantially different from the exclusion at issue here. The exclusion cited in *Bauco* required the insured to "use all reasonable means to save and preserve property at and after the time of loss *or when property is endangered by a peril insured against.*" *Id.* at *10. In other words, the provision in *Bauco* explicitly excluded damage resulting from the insured's failure to protect property from a known peril. In contrast, the neglect exclusion at issue here contains no such language. Therefore, I will deny Travelers' Motion for Summary Judgment with respect to this provision. Travelers has not shown that Abbasid failed to safeguard the rugs from further damage at or after the time of loss.

Next, Travelers claims that the damage is excluded under the provision which excludes damages from continuous leaks. Provision (B)(2)(f) excludes damage caused by or resulting from "continuous or repeated seepage or leakage of water or other liquids that occurs over a period of 14 days or more." Travelers claims that the leaks and mold which damaged Abbasid's property had been ongoing for months before any damage occurred. As evidence, Travelers attaches a letter from Abbasid's store manager to Travelers stating that leaks were occurring on a daily to weekly basis. Ex. D, Defendant's Motion, at 2. Travelers also attaches the Complaint

that Abbasid filed in state court against the landlord. In that Complaint, Abbasid asserts that "[f]or months after plaintiff did open, plaintiff suffered daily or near-daily downpours of water from above the ceiling of the Premises, which caused additional damage to plaintiff's inventory . . . . [T]he leaks continued on a daily or near-daily basis for several months . . . . The leaks from above the Premises caused mold within the Premises, further damaging plaintiff's inventory . . . ." Ex. E, Defendant's Motion, at 3-4.

In response, Abbasid acknowledges that repeated leaks occurred, but argues that Travelers has not shown that the damage was *caused* by the repeated leaks. According to Abbasid, "[Travelers] has not introduced one iota of evidence that any of the rugs was exposed to these leaks for a 14 day period." Plaintiff's Response, at 8-9. Abbasid also alleges that it is "self-evident" that a leak of less than 14 days would irreparably damage the rugs.

There is no New Mexico case law discussing this provision. Most of the case law from other jurisdictions dealing with continuous-or-repeated-leakage exclusions like this arise in the context of damage to a building's foundation from longstanding leaks or seepage. *See, e.g.*, *Ellis v. State Farm Fire and Cas. Co.*, 322 Fed. Appx. 594 (10th Cir. 2009); *General Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, 288 F.3d 651 (5th Cir. 2002). One case from the Western District of Texas, however, is particularly enlightening. In that case, the plaintiff's apartment complex sustained foundation damage from various plumbing leaks that seeped into the soil. *U.E. Texas One-Barrington, Ltd. v. General Star Indemnity Co.*, 243 F.Supp.2d 652, 658-59 (W.D. Tex. 2001). Plaintiff submitted an insurance claim to defendant, and defendant denied the claim based on an exclusion for "continuous and repeated seepage or leakage of water that occurs over a period of 14 days or more." Plaintiff objected, arguing that defendant had presented "no evidence to establish that the foundation movement was caused by leaks

continuing to occur for more than 14 days" and because "the foundation movement could have occurred within the first 14 days of the leaks." *Id.* at 662. The Court rejected Plaintiff's arguments and held that the exclusion applied because Plaintiff "has presented no evidence that the damages first manifested themselves in less than 14 days." *Id.* at 666. In other words, the Court *presumed* that the damage was caused by water leaks occurring for more than 14 days because Plaintiff had presented no evidence to the contrary.

Similarly, Abbasid has not presented any evidence that these rugs were damaged within the first 14 days of the leaks. It asserts, without citing to any evidence, that "it should be self-evident that exposure to raw sewage, or even dirty dishwater or other such leaks, would irreparably damage these rugs, whether the rugs stewed in this fetid marinade of sewage, HVAC condensation and rainwater for 14 days or for just 14 seconds." Response, at 9. The Court would be more inclined to accept this "self-evident" assertion if Abbasid had proffered evidence that the leaks were substantial, were immediately next to the rugs, or consisted of a particularly toxic substance. Furthermore, Abbasid could have included an affidavit from a materials expert asserting that these particular leaks would have caused instant damage to the rugs. But Abbasid has offered none of the above. Travelers has put forth competent evidence—in the form of statements by the store manager and the state court complaint filed by Abbasid—that the rugs were damaged by leaks lasting for more than 14 days. It is Abbasid's burden to put forth some evidence disputing this fact. Because it has not done so, the Court must conclude that there is no material dispute of fact. Accordingly, the Court will grant Travelers' Motion for Summary Judgment with respect to this provision. The mold and water damage discovered in December 2005 and January 2006 is excluded under the continuous-leakage provision of the policy.

## CONCLUSION

For the reasons described above, the Court finds that the damages asserted by Abbasid are clearly excluded from coverage in Travelers' insurance policy. Therefore, the Court GRANTS Defendant Travelers' Motion for Summary Judgment.

**SO ORDERED.**

                                                                                    _____
                                                                                    UNITED STATES DISTRICT JUDGE